UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

**VLADIMIR F. ARTEAGA**,

                            Plaintiff,

            – against –

**COMMISSIONER OF SOCIAL SECURITY**,

                            Defendant.

---------------------------------------------------------------X

**MEMORANDUM DECISION
AND ORDER**

19-CV-01630 (AMD)

**ANN M. DONNELLY**, United States District Judge:

The plaintiff seeks review of the Social Security Commissioner's decision that he is not

disabled for the purpose of receiving benefits under Title II of the Social Security Act.  For the

reasons that follow, I grant the plaintiff's motion for judgment on the pleadings, deny the

Commissioner's cross-motion, and remand the case for further proceedings.

## BACKGROUND

On January 5, 2005, the plaintiff applied for disability insurance benefits ("DIB") after he

fell down a flight of stairs and broke his back.  (Tr. 41, 60, 71.)  The Commissioner approved his

claim on March 22, 2007 (Tr. 60), and renewed his benefits on February 23, 2011, after a

continuing disability review ("CDR").  (Tr. 71.)  In August of 2015, the plaintiff's benefits were

terminated, based on the Commissioner's conclusion that the plaintiff did not participate in a

second CDR in 2014.  (Tr. 188.)  The plaintiff claims that he did participate in the 2014 CDR; he

obtained records from his treating physicians and mailed them to the Social Security

Administration ("SSA").  (Tr. 268.)  However, the local SSA office did not receive the records,

and denied his 2014 CDR for "failure to cooperate."  (Tr. 188, 268.)  When the plaintiff visited

the local office to get his benefits reinstated, he was told that he would have to file a new

application for benefits.  (Tr. 268-69.)

On December 30, 2015, the plaintiff filed a new application for DIB alleging disability because of a spine disorder (including a multi-level disc fusion), asthma and high cholesterol, with an onset date of February 23, 2011.  (Tr. 59, 63-64.)  The plaintiff's claim was denied on May 4, 2016.  (Tr. 67.)

Administrative Law Judge ("ALJ") LaSandra Morrison held a video hearing on March 23, 2018, at which a vocational expert and the plaintiff, represented by a lawyer, testified.  (Tr. 31-58.)  In a May 24, 2018 decision, the ALJ denied the plaintiff's disability claim.  (Tr. 9-25.) She found that the plaintiff had the following severe impairments: "spine disorder, asthma, Post Traumatic Stress Disorder, and affective disorder," but that none of these impairments met or equaled the applicable listings.  (Tr. 14-15.)[1]  The ALJ concluded that the plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R § 404.1567(b), with limitations:

> He can occasionally lift and or carry 20 pounds, frequently lift and/or carry 10 pounds. He can sit for six hours out of an 8-hour work day and stand and/or walk two hours out of an 8-hour work day. He can never climb ladders, ropes, and scaffolds and occasionally climb ramps and stairs, occasionally stoop, kneel, or crouch. He can never crawl and must avoid fumes, odors, and dusts greater than found in a normal office environment. He must further avoid gases, poor ventilation, unprotected heights and unprotected moving machinery.

---

[1] The plaintiff was working at the World Trade Center when terrorists attacked on September 11, 2001. (Tr. 408.)  He was treated for asthma and other respiratory problems at the WTC Environmental Health Center at Elmhurst Hospital.  (*Id*.)  After scoring positive for anxiety and depression on the clinic's mental health screening, the plaintiff was referred to the WTC Behavioral Health Services program for mental health treatment.  (*Id*.)  However, his initial consultation with a mental health specialist did not occur until April 29, 2016, after he filed his disability claim, and days before the initial denial.  (*Id*.)  The record reflects that the plaintiff received regular mental health counseling from April of 2016 through the date of the hearing.  (Tr. 407-99.)

(Tr. 17.)  Relying on the testimony of the vocational expert, the ALJ found that although the plaintiff was unable to perform his past relevant work as a shoe salesperson, he could perform other jobs in the national economy.  (Tr. 23-24.)

The Appeals Council denied the plaintiff's request for review on January 31, 2019.  (Tr. 1-3.)  The plaintiff filed this action on March 21, 2019 (ECF No. 1), and both parties moved for judgment on the pleadings.  (ECF Nos. 11, 22).

## STANDARD OF REVIEW

A district court reviewing a final decision of the Commissioner must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005).  The court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them.  42 U.S.C. § 405(g).  "'[S]ubstantial evidence' is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The court must defer to the Commissioner's factual findings when they are "supported by substantial evidence," but will not "simply defer[]" "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal citations and quotation marks omitted).  Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision."  *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (quoting *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## DISCUSSION

The plaintiff argues that the defendant should have given him an administrative hearing on his continuing disability claim, rather than instructing him to file a new claim.  (ECF No. 12 at 13-18.)  He also challenges the ALJ's evaluation of the treating physicians' opinions, as well as her evaluation of the plaintiff's subjective symptoms.  (*Id*. at 19-22, 24-25.)  Finally, the plaintiff objects to the ALJ's analysis of his residual function capacity because she did not factor in his mental limitations.  (*Id*. at 22-24.)

### I.      Termination of Benefits

In 2004, the plaintiff fell down the stairs in his building and broke his back.  (Tr. 41, 330.)  After this accident, he received epidural injections and physical therapy, and in 2007 underwent a lumbar fusion at levels L4-L5 and L5-S1.  (Tr. 41, 71, 330.)  On January 5, 2005, the plaintiff applied for DIB because of back and ankle injuries (Tr. 12, 71), and on March 22, 2007, the Commissioner granted his application for benefits.  (Tr. 268.)  On February 23, 2011, the Commissioner performed a CDR to determine whether the plaintiff's condition had improved enough to enable him to return to work.  (Tr. 70-71.)  The Commissioner reviewed the plaintiff's medical records, the report of a consultative examiner and reports from his treating physicians, and determined that the plaintiff's disability was "continuing."  (Tr. 70.)

In a February 24, 2011 letter, the Commissioner informed the plaintiff that he was still classified as "disabled" and would continue to receive benefits, but that his health was expected to improve, and that the Commissioner would conduct another CDR in January of 2014.  (Tr. 161-62.)  In a July 17, 2016 affidavit, the plaintiff testified that he received the Commissioner's request for information about his medical conditions in 2014; his treating physicians provided

information, which the plaintiff mailed to the SSA.  (Tr. 268.)  The plaintiff claims that the local

office did not receive that information.  (*Id.*)

The Commissioner suspended the plaintiff's benefits for failure to cooperate with the

CDR process on August 20, 2014, and sent the plaintiff a letter advising him that he had until

August 1, 2015, to submit the required documentation or he would have to file a new claim to

receive benefits; the plaintiff claimed that he did not receive this letter.  (Tr. 268.)  He called the

SSA's 1-800 number to find out why he was no longer receiving benefits, and was instructed to

visit his local office.  (*Id.*)  On June 15, 2015, the plaintiff went to the local office in Brooklyn to

discuss his daughter's benefits, and asked what he needed to do to reinstate his own benefits.

(*Id.*)  The representative told him that he could not be reinstated, and that he needed to file a new

application for benefits.  (Tr. 268-69.)  The plaintiff went back to the local office on June 25,

2015, and was told again that he had to file a new application for benefits.  (Tr. 269.)

In August of 2015, the Commissioner notified the plaintiff by letter that his benefits had

been terminated, and that he had 60 days to request a reconsideration of the CDR determination.

(ECF No. 23 at 12.)  About a month later, the plaintiff and his wife visited the local office; this

time, a representative told him that his claim could be reinstated, and that he did not have to file

a new application.  (Tr. 269.)  However, when he tried to make an appointment to file an

application for reinstatement, he was given a February 22, 2016 appointment to file a new

application.  (*Id.*)  He filed the new application on that date, and on May 4, 2016, the

Commissioner determined that the plaintiff was not disabled.  (Tr. 67, 166.)

On May 13, 2016, the plaintiff requested a hearing on the denial of benefits, arguing that

his benefits "should have been reinstated rather than having to reapply."  (Tr. 82.)  The plaintiff

retained counsel, and on July 17, 2016, submitted an affidavit in further support of his request for

a hearing on the reinstatement of his benefits.  (Tr. 268-69.)  He detailed his efforts to cooperate

with the 2014 CDR and claimed that the suspension of his benefits violated his due process.  (Tr.

268.)  The Commissioner acknowledged the plaintiff's request for a hearing by letter dated June

9, 2016 (Tr. 84-86), but did not identify which issues the ALJ would address at the hearing.

The plaintiff argues that he was entitled to an administrative hearing on the termination of

his benefits pursuant to SSR 91-5p, 1991 WL 208067 (S.S.A. July 1, 1991), and that the ALJ

should have permitted him to testify about the Commissioner's termination of his benefits in

2015.  (ECF No. 12 at 14.)  According to the plaintiff, the error unfairly shifted to him the

burden of proving that he was disabled; if he had been permitted to challenge the termination of

his benefits, he would have been entitled to a presumption that his disability continued unless the

Commissioner found substantial improvement in his condition. (*Id.* at 15 (citing *De Leon v.*

*Sec'y of Health & Human Servs.*, 734 F.2d 930, 937 (2d Cir. 1984) ("[H]aving once established

that a particular condition is disabling, a claimant is entitled to a presumption that as long as

there is no change in the condition itself, or in the governing statutes or regulations, neither will

the statutory classification of disability be changed.")))  The Commissioner takes the position

that the plaintiff did not follow proper procedure to challenge the termination of his benefits, and

that he was not entitled to make his objections at the administrative hearing on his new

application.  (ECF No. 23 at 12-13.)

The regulations provide that a claimant's disability benefits may be terminated if the

claimant fails to cooperate with the CDR process.  20 C.F.R. §404.1594(e)(2) ("If there is a

question about whether you continue to be disabled and we ask you to give us medical or other

evidence or to go for a physical or mental examination by a certain date, we will find that your

disability has ended if you fail, without good cause, to do what we ask.")  The Commissioner

6

"shall reconsider an initial determination" if a claimant requests a review of that determination

by filing a written request "[w]ithin 60 days after the date you receive notice of the initial

determination." 20 C.F.R. § 404.909(a).  If a claimant misses that deadline, he may file a written

request for an extension that explains "why the request for reconsideration was not filed within

the stated time period." 20 C.F.R. § 404.909(b).  Requests for extensions are reviewed for good

cause in accordance with 20 C.F.R. § 404.911, which requires the Commissioner to consider

"[w]hat circumstances kept you from making the request on time," "[w]hether our action misled

you," and "[w]hether you had any physical, mental, educational, or linguistic limitations . . .

which prevented you from filing a timely request . . . for review."  *See also* SSR 91-5P, 1991 WL

208067 (S.S.A. July 1, 1991).

There is insufficient evidence on this record to conclude that the Commissioner violated

the plaintiff's due process by denying him an administrative hearing on the termination of his

benefits.  It is not clear that the plaintiff followed the necessary administrative procedures to

request review of the 2015 denial of continuation of benefits.  *See Lanzer v. Colvin*, No. 3:16-

CV-155(WIG), 2017 WL 959730, at *2 (D. Conn. Mar. 13, 2017) ("A claimant must complete

an administrative review process in order to obtain a judicially-reviewable final decision.").

Nevertheless, it appears that the plaintiff tried to participate in the CDR process in 2014, but that

the staff in his local office gave him conflicting and confusing information when he tried to find

out why his benefits were terminated.  *See* 20 C.F.R. § 404.911(b) (listing examples of good

cause for missing a deadline, including where the SSA "gave [the claimant] incorrect or

incomplete information about when and how to request administrative review").  Nor is it clear

that he was properly advised about how to appeal the CDR determination; the record shows only

that the plaintiff's 2014 CDR was dismissed for failure to cooperate.  (Tr. 188.)  Moreover, the

plaintiff was not represented by counsel, had significant physical and mental limitations, and was given conflicting directions when he tried to find out what he had to do to reinstate his benefits. This combination of circumstances may very well constitute good cause for his failure to request a timely review of the termination of his benefits. *See* 20 C.F.R. § 404.911(a)(2) & (4). On remand, the Commissioner should consider whether the plaintiff is entitled to an administrative hearing on the termination of his benefits in 2015.

## II.     The ALJ's Decision Lacked Sufficient Evidence

The plaintiff also challenges the ALJ's decision that he was not disabled. I agree that remand is necessary so that the record can be developed more fully.[2]

### A.     Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). Accordingly, the ALJ has an "affirmative duty to develop the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). The record is fully developed if it is "complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity." *Roman v. Colvin*, No. 15-CV-4800, 2016 WL 4990260, at \*7 (S.D.N.Y. Aug. 2, 2016), *report and recommendation adopted*, 2016 WL 4919960 (S.D.N.Y.

---

[2] It is not entirely clear when the plaintiff was last insured for the purpose of determining when he was disabled. The ALJ seemed to conclude that July 31, 2015 was the date he was last insured, although she also mentioned August 1, 2015. (*See* Tr. 12 (because the plaintiff was "previously filed disabled through July 31, 2015," the "period under adjudication is August 1, 2015 forward").) She confirmed that July 31, 2015 was the date of last insured ("DLI") at the hearing, meaning the plaintiff would have to show that he was disabled before that date. (Tr. 12-13, 36.) At another point, in her evaluation of the plaintiff's mental impairments, the ALJ suggested that the DLI was September 30, 2020, and she assessed the severity of his PTSD and depression, even though those impairments were not diagnosed until 2016. (Tr. 14, 22.) The plaintiff alleges that he was disabled as of February 23, 2011—when the Administration last evaluated him and found him to be disabled—but the ALJ held that he was not disabled from February 23, 2011 through the July 31, 2015. (Tr. 13, 24.) This contradicts the Administration's earlier finding that he was disabled from February 23, 2011, until July 31, 2015. (Tr. 70-71.) The Commissioner should resolve this ambiguity on remand.

Sept. 14, 2016). "Whether the ALJ has met [her] duty to develop the record is a threshold question," *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 261-62 (S.D.N.Y. 2016), and remand is necessary where an ALJ does not adequately develop the record. *See Moran v. Astrue*, 569 F.3d 108, 114-15 (2d Cir. 2009).

The duty to develop the record "includes seeking opinion evidence, usually in the form of medical source statements, from the claimant's treating physicians." *Martinez v. Comm'r of Soc. Sec.*, No. 16-CV-2298, 2017 WL 9802837, at *13 (S.D.N.Y. Sept. 19, 2017), *report and recommendation adopted*, 2018 WL 1474405 (S.D.N.Y. Mar. 26, 2018). Remand is not always warranted for an ALJ's failure to obtain opinion evidence from a treating physician, particularly where the record contains the well-supported opinion of a consultative expert or "when the medical evidence shows only minor physical impairments." *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013); *Williams v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 411, 417-18 (W.D.N.Y. 2019). However, "an ALJ is not a medical professional, and 'is not qualified to assess a claimant's RFC on the basis of bare medical findings.'" *Williams*, 366 F. Supp. 3d at 418 (quoting *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018)).

The only medical opinion in the record is from the state agency examiner, Dr. A. Aviles, whom the ALJ did not mention in her decision.[3] There is not a single opinion from a treating physician or other source about the extent to which the plaintiff's impairments affect his

---

[3] Dr. Aviles reviewed the treatment records of Drs. Sebastian Lattuga, Jeffrey Appelbaum and Alain Sosa and opined that the plaintiff could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds; that he could stand, walk, or sit for up to six hours of an eight-hour workday, occasionally climb ramps, stairs, ladders, ropes and scaffolds, and occasionally stoop, kneel, crouch and crawl; and that he should "avoid even moderate exposure" to fumes, dusts, and gases. (Tr. 63-67.) But there is no opinion evidence that suggests this determination, and Dr. Aviles did not recommend a consultative examination. (Tr. 63, 65.) The state psychological examiner, Dr. S. Hou, explained that the plaintiff "reported psych issues related to 9/11," but that "there are no records available for the period prior to DLI. [T]herefore[,] there is Insufficient Evidence available to make a determination." (Tr. 64.)

functional abilities.  The ALJ noted that in 2016, Dr. Sebastian Lattuga, the plaintiff's spine

surgeon, and Dr. Billy Ford, a pain management specialist, recommended that the plaintiff

"refrain from heavy lifting, carrying and bending"; the ALJ gave this "opinion" evidence "some"

weight in determining the plaintiff's RFC.  (Tr. 22)   But the doctors made these observations in

the treatment notes as part of treatment plans (Tr. 405, 396); neither doctor rendered an opinion

about whether the plaintiff's limitations affected his capacity to work or to function in matters of

daily living.  Moreover, although the ALJ described the plaintiff's mental impairments as

"severe" at step two of her analysis—including "moderate" limitations in "interacting with

others" and with "concentrating, persisting, or maintaining pace" (Tr. 15)—the record does not

include any medical opinion about the extent of the plaintiff's mental limitations.  In the absence

of this evidence, the ALJ could not determine how the plaintiff's physical and mental limitations

affected his ability to work without "substitut[ing] [her] own judgment for competent medical

opinion."  *Quinto v. Berryhill*, No. 3:17-CV-00024, 2017 WL 6017931, at *12 (D. Conn. Dec. 1,

2017).  This alone merits remand.  *See, e.g.*, *Guillen v. Berryhill*, 697 F. App'x 107, 108-09 (2d

Cir. 2017) (remanding where the "medical records discuss [the plaintiff's] illnesses and suggest

treatment for them, but offer no insight into how her impairments affect or do not affect her

ability to work, or her ability to undertake her activities of everyday life"); *Lilley v. Berryhill*,

307 F. Supp. 3d 157, 160 (W.D.N.Y. 2018) (remanding where "the record lacks a useful medical

opinion by any treating or examining source that addresses whether and to what extent [the]

plaintiff's mental impairments impact her ability to perform work-related functions"); *Hooper v.

Colvin*, 199 F. Supp. 3d 796, 811-12 (S.D.N.Y. 2016) (remanding where "the ALJ failed to

obtain a comprehensive assessment of the functional limitations caused by [the plaintiff's]

mental impairments from any treating or consultative physician").

**B.      The RFC Determination was not Supported by Substantial Evidence**

Although the record does not include opinion evidence, it contains extensive objective

medical evidence about the plaintiff's spinal disorder. (*See* Tr. Exs. 1F, 6F, 9F, 13F, 14F, 16F,

17F, 22F.)  This evidence documents multiple conditions that appear to be worsening, including

a cervical sprain (Tr. 365-81, 405), cervical radiculopathy (Tr. 347), a lumbar sprain and

herniation with radiculopathy (Tr. 395, 405), degenerative disc disease from C4 to C7 (Tr. 500),

a herniation at C4-C5 that is impinging on the spinal cord and disc displacements at C5-C6 and

C6-C7 (Tr. 641), and adjacent disc disease with spondylolisthesis at L3-L4.  (Tr. 640-41.)  The

plaintiff has consistently complained of lower back pain—which his 2007 fusion surgery

improved but did not alleviate—as well as numbness and pain in his right leg and aggravated

symptoms with sitting or standing for extended periods. (Tr. 289, 293-94, 303, 317, 330, 364,

500, 640.)  Moreover, on October 20, 2017, the plaintiff was struck by a car while crossing the

street outside of Elmhurst Hospital (Tr. 593-96), resulting in shoulder and knee injuries and

increased neck pain.  (Tr. 594, 638, 640.)  Dr. Kanwarpaul Grewal, an orthopedic spine surgeon,

noted on January 30, 2018, that the plaintiff's quality of life had "deteriorated," and that he had

severe limitations in performing day to day activities.  (Tr. 640.)

Although the plaintiff had an extensive treatment history for back pain—including a

"failed" spinal fusion surgery (Tr. 286, 303, 317), facet injections, lumbar epidurals, physical

therapy, narcotic medication, and impending cervical surgery—the ALJ concluded that he was

able to perform "light work" with some exertional, postural, and environmental limitations

because he took pain medication only "as needed" and that anti-inflammatory medication

"provided him relief."  (Tr. 22.)  The ALJ also concluded that the plaintiff could occasionally lift

20 pounds and frequently lift up to 10 pounds, and that he could stand or walk for two hours per

day and sit for up to six hours each day (Tr. 17, 23), but it is not clear how she reached this

conclusion; there is no medical opinion that the plaintiff had such functional ability, nor does the

plaintiff's testimony support that conclusion.[4]  "[A]n ALJ's determination of RFC without a

medical advisor's assessment is not supported by substantial evidence."  *Judd v. Berryhill*, No.

17-CV-1188, 2018 WL 6321391, at *7 (W.D.N.Y. Dec. 4, 2018).  "[T]he ALJ's decision

demonstrates her 'reliance upon her own lay opinion to determine Plaintiff's RFC, an error

requiring remand.'"  *Blowe v. Comm'r of Soc. Sec.*, No. 19-CV-2658, 2020 WL 3129062, at *5

(E.D.N.Y. June 12, 2020) (quoting *Judd*, 2018 WL 6321391, at *7).

      Moreover, the ALJ's conclusion that the plaintiff had an RFC of "light" work conflicts

with the vocational expert's testimony that the plaintiff's functional limitations, particularly his

limitations on standing and walking, meant that he could perform jobs only in the "sedentary"

work category (Tr. 55-56), and the vocational expert identified only "sedentary" jobs.  (Tr. 56.)[5]

Although someone with an RFC to perform light work can usually perform jobs classified as

"sedentary," there is an exception if the plaintiff is unable to sit for long periods of time.  *See*

SSR 96-9p, 1996 WL 374185, at *6-7 (July 2, 1996) ("If an individual is unable to sit for a total

of 6 hours in an 8-hour workday, the unskilled sedentary occupational base will be eroded.").  In

addition to seeking medical opinion evidence, the ALJ should consider on remand the plaintiff's

long history of lower back problems and his testimony that he could not sit for more than fifteen

---

[4] The plaintiff testified that he could only stand and walk for between ten and fifteen minutes, could sit for only about fifteen minutes before experiencing numbness in his legs and groin and could lift between five and ten pounds.  (Tr. 50-51.)

[5] "Sedentary" work "requires occasional walking and standing, modest prescribed lifting capability, and the capacity to sit for long periods of time."  *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1567(a), (b)).

minutes, and determine whether the plaintiff can sit for long periods without changing positions.

*See, e.g.*, *Gavazzi v. Berryhill*, 687 F. App'x 98, 101 (2d Cir. 2017); *Chiappa v. Comm'r of Soc. Sec.*, No. 18-CV-3508, 2019 WL 5722119, at *21 (S.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*, 2019 WL 4894360 (S.D.N.Y. Oct. 1, 2019).

### CONCLUSION

The plaintiff's motion for judgment on the pleadings is granted, the Commissioner's motion for judgment on the pleadings is denied, and the case is remanded for further proceedings pursuant to this order.  On remand, the Commissioner is directed to (1) determine whether the plaintiff has shown good cause for failing to make a timely request for a hearing on the discontinuation of his benefits in 2015; (2) clarify the relevant time period, including the alleged onset date and the date the plaintiff was last insured; (3) develop the record by obtaining medical source statements from the treating physicians, or scheduling a consultative examination if necessary; and (4) re-evaluate the plaintiff's subjective symptoms in light of this additional evidence.

**SO ORDERED.**

s/Ann M. Donnelly

_____

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       July 29, 2020

13